Good morning, Your Honors. My name is Carl Gunn and I represent Mr. Wakil. I'm going to try to save three minutes for rebuttal, if I can. And I certainly want to spend some time on the Feretti issue that affects everything. But before I do that, I would like to highlight one key argument on each of the search issues. First, on the FedEx packages search, the government has the problem with the search warrants language. Just take this piece of paper here, the warrants. I have a problem with your argument on that. Let me spell it out. We use FedEx all the time to ship our stuff back and forth from home chambers to where we're sitting. And usually there's a piece of paper. I may have one handy here. I don't see it right now, but it doesn't matter. And you stick it in the plastic envelope or you stick it onto the FedEx box. And there are multiple sheets for the sender's copy to retain. The FedEx copy, I can't remember what they call the third copy, and then the fourth copy stays stuck to the box. And they have a number. And you want to ship a second box, you use a second sheet, and it has a different number. Now here, the search warrant said to search one box with one number. But there were two boxes with the same number. Really strange. So what the warrant said, on the one hand, it said one box. On the other hand, it said search the box with this number. And there are two boxes with that number. So I don't see why the warrant has to be read to mean one box any more than it has to be read to say search the box with that number. And if there are two of them, then two have that number. Only one would have that number. It would be the same, Your Honor, as if you shipped something and you didn't use tracking numbers and you just identified it by the address and there were three boxes with that address. No, it wouldn't be the same. Counsel, there's an inherent ambiguity. The warrant also says search warrant for parcels in the plural and the description of the parcels in the plural. So that already makes it somewhat ambiguous as to whether they have authority to examine parcels in the plural. And the text of it goes on about parcels in the plural. It appears at least four times that I can see on the face of the warrant. It keeps using the word parcels, yes. Yes. And then it defines parcels. So it just seems to me that this is not exactly the sort of general search that the warrant requirement is designed to avoid. They're not going to look in somebody's trunk of his car and his pockets and anything else. They're two identical boxes with the exact tracking number that appears in the warrant. So it seems to me that a minimum, the good faith exception applies here. And I really, just speaking for myself, I have difficulty with that particular argument. Well, there's two responses I'd give you, Your Honor, and I don't want to spend too much time on just this issue, obviously. But first of all, I agree parcels is ambiguous. The problem is one cardboard box is not. For what it's worth, the district court itself, if you look at excerpt of record 26, I believe it is, 26 to 27, the district court itself characterized the search warrant as, quote, clearly, unquote, authorizing the search of just one box. So the district court certainly read it clearly that way. What's our standard of review? Well, the standard of review is de novo. I'm just pointing out. Right. So it doesn't matter what the district court said. Well, it shows you that one other reasonable person or judge interpreted it that way. The other point I wanted to make, Your Honor, is good faith doesn't apply here, because if the warrant is for one cardboard box, which, of course, is what it literally says, then the search of the other box was warrantless, and the good faith exception doesn't apply to warrantless searches. Well, which one is the box, though? If they're identical boxes with the same tracking number, how do you know which was the right one and which was the wrong one? And that's exactly the problem with the government's argument that, well, gee, at least one of them could be searched. When you have two or three or more different things that fit a description, you have to be more specific in your description to pick one of those out. Well, nobody would be more specific. This warrant didn't do that. I'm sorry. Nobody would be more specific than a tracking number. It's just I've never seen two FedEx boxes have the same tracking number, and I was thinking the same thing Judge Graber was. Cop says, well, I'm just going to look at one box. I only want to open one box, and that's tracking number N. And, oh, gosh, there are two boxes with tracking number N. Which one do I open? Actually, in this case, well, first of all, there might have been something different about the box. Like it had some other mark on it. In this case, I believe one of them was original. A search warrant is a command to search as much as it's a limitation on the search. The policeman is commanded to search the box with tracking number N. Right, but a warrant that doesn't identify which of two that fit the description is not sufficiently specific and not valid in the Fourth Amendment. In this case, it could have been done, I believe, because I believe one of the boxes had an original and one of them had a copy. Counsel, before you run out of time, because your time is short, I would appreciate your addressing briefly at least the Feretta issue, which I think is your main issue. And I think what would be helpful to me is why, in your view, it is not an appropriate view of the record taken as a whole that your client understood what his options were, understood his rights, understood everything that's required to make a knowing and intelligent waiver. In this instance, the two deficiencies I'm suggesting are the nature of the offense and the potential penalties. First of all, Your Honor, I do want to really highlight the Forrester case, which says three things that I think are really important here before you start looking at the record as a whole. First of all, it says that, quote, the Feretta hearing transcript is ordinarily the only part of the record to which we look, unquote. Second, it says we consider, quote, the record as a whole, unquote, only as a very limited exception in very, quote, rare cases, unquote. Third, they say that the defendant's active involvement in his own defense is not sufficient to show, which, of course, is mostly what the government highlights here. There's three reasons, well, around three reasons, and maybe a little more why I think the record as a whole doesn't show it here, Your Honor. First of all, the government points to what Mr. Wakeel said about sentence at this colloquy ten months after the waiver. That wasn't sufficient for a couple of reasons. First of all, what he, quote, knew, unquote, first of all, was something really ridiculous, that cocaine convictions didn't count as a prior conviction. Let me direct you, because I'm concerned that we'll run out of time before we get to this. At his initial appearance, your client said that he understood the substance of the charges pending and that he read the charges or had them read to him. Right. So that's something. He also wrote a letter to the court talking about the allegations, the charges. He referred to some of them by number and discussed the relevant evidence. And he talked later to the court about being dissatisfied with his counsel's suppression motions and discussed them in extremely great detail. So isn't that context that we can look at to determine what he actually knew and what his state of mind was? Frankly, I think under Forrester and this Court's other precedent, you can't. You do it only in rare cases. Well, Forrester says the rare case. Why isn't this a rare case? That doesn't mean there are no cases. Yes. What Your Honor just described is really what there was, I believe, in Forrester, that he was actively involved in his own case. Look at what we don't have here. Well, it's not just active involvement. You said the problem was he didn't understand the nature of the offense and the penalties. And if the record shows that he actually did understand the nature of the offense and the associated penalties, then that's not just a vague active involvement. Let me step back to that thing, Your Honor. He said he understood the charges and he said he read the indictment. But in no time did he ever say what he understood the charges to be. All he described about the charges was that he possessed with intent to distribute cocaine. He never, for example, discussed what he understood conspiracy to mean. Counsel? Yes. Wasn't he prosecuted by the State? I don't believe he was prosecuted for conspiracy. I think he was prosecuted for some sort of substantive drug offense. Some sort of exactly arising from this incident, right? Yes. Right. Well, no, I'm sorry, two of the three. Okay. And what was the status of the State prosecution at the time of the federal Ferretta hearing? In one case, the motion to suppress had been granted and then the case, I guess, had been dismissed or thrown out. I don't know if the State was in the process of appealing. In the other instance, there was either a direct appeal or a habeas petition pending. And you have my motion for judicial notice. Right. And I have a timeline that we put together preparing for this case. And, again, I share Judge Graber's concern about time. But when you're talking about Forrester and what he knew and what she's asked you to consider, I just want you to know, because I'm part of your audience too, and a huge distinguishing factor seems to me to be everything he learned in the State prosecution. Right. He's an unusual defendant. He's got lots of information about the charges against him. The nature of the charges, Your Honor, was conspiracy. He had no experience with conspiracy. And here conspiracy was not a simple thing. This was not your typical conspiracy where you had Defendant X and Defendant Y getting together and agreed to sell the customer. This was a buyer-seller conspiracy. Yes. Okay. And the buyer-seller conspiracies do actually raise complex issues of conspiracy law. And so, you know, there's no indication that he understood that conspiracy requires an agreement and exactly what that means. Yes, he apparently had either read or had read to him at the arraignment the conspiracy charge, which uses the word agree. But, you know, no one explained what that meant. And your conspiracy charge, of course, is several pages long. What he focused on when he described the charges in his pleadings was the substantive conduct of possessing cocaine to distribute, either in the substantive offenses or in the overt acts. So I don't think we can so readily assume that he understood, for example, the nature of the conspiracy charge, which Forrester talked about. Okay. So I understand your response to my part of the question. Now go back to Judge Graber's part of the question. All right. I'm not sure I buy it, but I'm listening attentively. Okay. So that's why I think you can't assume he knew the nature of the offense. On the sentence issue, then understanding the potential penalties, there's two problems. Aside from the issue of he clearly had a ridiculous misconception of the prior conviction enhancement, there is also the fact that we don't know when he gained that knowledge. Under Erskine, you need that knowledge at the time of the waiver. And there's no indication here of when he had that. So that's problem number one. Problem number two, which I don't think your honors should slide by overly easily, is no one ever told him about another very significant part of the penalties, the supervised release. There was a mandatory minimum term of 10 years supervised release with a maximum of life here. No one ever claimed to explain that to him. Now the government scoffs and basically says that's not important. Well, the Arredondo case and the Garrison case both look to Rule 11, which is analogous context. And Rule 11 certainly requires advice about supervised release. So you've got those two problems as far as the potential penalties. Now, you know, it may be that the judge can try to correct that after the fact if and when he realizes he made a mistake, but this was far too late. Counsel, you're down to about a minute and a half. I have a question. I have a question I better ask before you're out of time. Suppose you were to lose on everything else or else not have it reached, but prevail on your Ferretta argument, what would the directions be in the remand? The directions in the remand would be to vacate the conviction, send it back to the district court. For what? To give Mr. Wakeel an opportunity to reassert his right to counsel. So what would happen would be you'd start over from scratch. He could waive counsel or not waive counsel, and then he would get a new trial. I guess in theory he could waive counsel again. I don't think he would want to. But it would be a do-over. It's a do-over, right? I'm sorry? It's a do-over, right? In answer to Judge Kleinfeld's question, you seem to not want to answer the question, but it's a do-over. Yes. Yes. I think I said that in my paper. Yes. It's a do-over. And the motions get relitigated. There is no double jeopardy issue or anything. No. What he would get and the best he could get is a new trial. Correct. And more important in this case, relitigating the suppression motions with not being polite to Mr. Wakeel, someone who knew what they were doing. Thank you. You have about half a minute, so. Thank you, Your Honor. Good afternoon, Your Honor. It's Benjamin Barron for the United States. I'm planning on taking eight minutes for the FREDA issue. My colleague, Mr. Seawright, seven minutes for the Fourth Amendment issues. So was there a conspiracy charge in the State case? I don't believe there was, Your Honor, but I don't think that's necessary. The defendant clearly understood that he was charged with acquiring the cocaine that he personally was distributing to others from Olivares, who was his wholesale distributor. There's never a buyer-seller argument that was relevant because the defendant was himself a wholesale distributor, but this wasn't an argument that was ever raised below or even on appeal. In the State case, he was successful on one of his suppression motions, right? Correct, Your Honor. In trial court, he was successful in suppressing the inventory search. Toolbox. The toolbox. The May 2011 Arizona. That's right. And is it correct in the Federal case, then, he didn't raise the argument that shaking the toolbox was a search? Your Honor, I would really prefer Mr. Seawright address questions on the Fourth Amendment issues. Oh, that's your part of the argument? Okay, well, you're on notice. I can answer that. I'm familiar with the record, but he obviously has been personally preparing for that. Forgive me. All right, so you're the FREDA guy. I'm the FREDA guy. Okay. I have a FREDA problem that I'm having. Yes. He's entitled to a proper colloquy, and it can be saved by the record if the record's clear at the time that he waived counsel. It's obvious the judge did not use the script that's in the district judge's bench book, and he didn't tell the defendant what the government would have to do if there were five counts, and didn't tell Waukeel what the maximum and minimum sentences, if any, would be. Often what the judge will do, since that's a very complex calculation, is just ask the prosecutor to state those things, but it's done in open court. I just don't understand how that can be saved by the prosecutor saying, well, I told them in private what you should have told them on the bench. My argument is not that that's what saved it, Your Honor. I also don't see how it can be saved by the defendant saying, oh, I know all that stuff. An awful lot of students have said, I know all that stuff, before getting an F on an exam. My argument is not that that saved it either, Your Honor. I want to be clear on that. I think that there are a couple different approaches I want to take to address that question. The first, I want to be clear. I think the court can look only at the Feretta hearings themselves in order to make the determination that the waiver was valid, and I'll explain that in a moment. But before I do, I disagree with the defendant's statement of law that this court only in rare circumstances looks to the totality of the circumstances. And let me give you four case sites for that. In the French decision, this court said the focus is properly on what the defendant understood, not what the court said or understood, and said a review in court may look to the record as a whole, not just the Feretta court. Do you understand that my questions assumed the point that you're making? Okay. It is a well-established point, so you can move on. So I just want to say the cases, it's French, Lopez-Asuna, Gerritsen, and Erskine all held that you looked at the totality of the record. Okay. We know. But let me, let me. What is the totality that saves this? Yes. So let's look first at the February 2014 hearing. At that hearing, the parties discussed at length the motions that were filed by defense counsel. And then, of course, four days later, another motion was filed by defendant personally, which predates the December 2014 further Feretta colloquy. The defendant was, as stated on the record at that February 2014 hearing, was personally and in detail involved in drafting the motions. He had reviewed the motions in detail and the substance of the hearing in August 2015. How do we know that? How do we know that? Nobody knows whether it's him or a jailhouse lawyer who's helping him or what? Well, we know that because it's stated on the record. The defense counsel actually said that he was intimately involved in the drafting of the motions, that he put the defendant's ideas in the paper. The defendant talked about declarations that were filed. They disputed talks. And then only four days after the February 2014 Feretta motion was granted, he files his own pro se motion. Does that show that he knew what the government would have to prove to sustain the charges and that he knew the minimum and maximum penalties that would be applicable? Your Honor, to answer? Or does it just show that he's generally knowledgeable about the legal issues? Let me quote this Court's decision in Lopez-Asuna to address that. And it's a published decision. You understand I'm asking about the facts. I understand. And I'm going to tie that decision to the facts of this case. In that decision, the defendant explicitly said he did not understand the elements and there was nothing in the Feretta hearing that addressed the elements. But at a prior hearing, the district court said you were released on December 7th, 1998. It was an illegal reentry case. You came back on December 15th, 1998. Eight days later, you came back. That was illegal. That didn't address the elements. That only addressed the general nature of the offense that he was charged with. Here, both the motions filed by counsel that the defendant participated in and his own pro se motion explicitly address the fact that in the substantive charges he was charged with knowingly and intentionally possessing with intent to distribute explicitly to overt acts and furtherance of that conspiracy. That is materially identical to the exact same advisement that this Court held was sufficient in Lopez-Asuna. When the district court held this February 2014 hearing, think of everything the district court knew. The district court knew that the defendant had been involved in two protracted State court litigation cases with protracted litigation on the same offense charged here. This is sort of tangent. I mean, this is where my other question, it's a crossover. Yeah. And this is where it matters. Your briefing argues that he was really skookum and really involved and really knew what was going on. But if my timeline here is right, and, you know, maybe it's not, but if my timeline is correct, he had already prevailed on a suppression motion in the State court. Yes. And he didn't raise it here? He did raise it here, Your Honor. The State court litigation was re-litigated. He raised a slightly different point about the toolbox. In State court, I think he had argued that the shaking was an improper search, and here he argued that the whole toolbox was improperly opened. It was a slightly, a slight variation. And in a really important variation, if he's not arguing that the shaking of the toolbox is a search. So I'm not sure that you need this for the Feretta argument. I think we do look to the totality, and I, you know, I think you've got a lot stronger argument to rely upon. But surely it's not that he was so skookum that he really understood what was going on, because the other thing that had happened is he had prevailed on an argument he winds up not raising here. It's quite extraordinary. Well, that was his strategic choice about what arguments to file or not. That's neither here nor there when it comes to the validity of the waiver. Exactly. Exactly. And we're only talking about the Feretta waiver. Right. So I'm not sure why you're trying to convince us that he knew what was going on and was such a great jailhouse lawyer because he made a pretty big mistake, I think. The point is that he was. Back to the Feretta. The point is he was aware of the general nature of the crimes charged against him. And let's look at Tovar. Isn't that all we need? That is all you need. And the Supreme Court in Tovar said one of the factors you look at in this pragmatic approach is the complexity of the charges. This isn't like wire fraud here. He's charged with knowingly and intentionally possessing cocaine and getting it from another wholesale dealer for his own distributions. He, his own motions made that clear, which were an inherent and an important part of that February 2014 transcript. But you can also look outside of that record at the motions and his involvement in litigation to see just how clearly and obviously he did understand this on the totality of the record. And then, you know, the December 2014 hearing, which was explicitly a ratification, a reentry of the waiver for the purpose of protecting the record on appeal, that was explicitly why that was done. The defendant is expressly told the statutory minimum and maximum that he's facing and says not only that he wants to continue representing himself, but agrees that he's eager to do so. But just quickly, because you're just about out of time, but going back to Judge Klinefeld's, I think, really spot-on question, it's a checklist, there's a script for this, and it wasn't followed, and there were things left off. So what is the, what's your best response to that? There is a preferred script, a preferred script. No magic words. We know that. But what about leaving off, for example, supervised release? A preferred, well, that's a separate issue. Well, it's not. I mean, he has to be advised of maximums and minimums and so forth. That is actually not correct, Your Honor. No case is ever held, the defendant doesn't cite, and I can never find a case that is ever held that a district court has to give that advisement. Part of the penalty is. Wait, wait, wait. Go ahead, Judge Klinefeld. I'm sorry. Go ahead. Let me, this is very important. In Campbell v. Virginia, 613 Fed Appendix 651 from 2014. What do you mean? 613 Fed Appendix what? 651. Okay. Which is nonbinding, nonbinding. I understand it's not binding, but it's still relevant. This Court said he was informed of the risk when the Court bluntly told him that he was looking at the rest of his life in prison. That is what he needed to know to make a knowing decision to waive counsel. If you look at all of the decisions that I cite, all of them hold that the defendant need only have a general understanding of the offenses. Even the Garrison decision. Wait. We're talking about penalties, not offenses, and it's not good enough to have a general understanding that you could go to prison for a while. So with penalties, it seems to me there has to be something quite a bit more precise told to the person. But I take your point that what we may not have ever decided whether 20 years imprisonment, which is accurate, is sufficient, or whether you also have to, at pain of a new trial, say 20 years in prison plus supervised release. But it's not your – so which is it when you said, no, no, it's not correct, when I said he has to be advised of the – what is it? What is not correct? He does not have to know the specific range of supervised release. All he has to know is he has a general sense of exactly what he's looking at, which is the amount of prison he's – and actually, even in TOFR, the Supreme Court said the defendant need not know the specific detailed consequences of invoking his right to represent himself. That's the part we do know. I just want to know what the government's position is on what he had to be told about penalties. That's it. The government's position is this. No court has ever held that advising a defendant of supervised release is required. The government is unaware of any case like that. So here's the answer. I'm going to give you one more chance to answer the question. What is the government – that's okay. That's all right, because we're firing questions at you. But here's the deal. What is the government's position about what he does have to be told about penalties, please? The defendant needs to at minimum understand the prison term that he's looking at and the exposure in prison that he's looking at. Full stop. Other collateral. Full stop. That's it? That is sufficient. If the defendant knows that he – the defendant doesn't even need to know the minimum. If he knows that he's looking at life in prison, that's enough for the defendant to make a knowing and voluntary decision. You look at Gerritsen for that. You look at Campbell v. Virginia. Even Orodondo says only a general understanding is required. There are two possibilities of how I can interpret what you just said, and I'm trying to make sure I understand. If the judge tells the defendant you could be looking at life imprisonment and actually one possibility is he gets out in 20 years, but he's on supervised release for the rest of his life, that's a lesser deprivation of liberty than what the judge told him. Another possibility is the judge tells the defendant you could be sentenced to prison for 10 years and does not tell him that he could be sentenced to supervised release for another period of time of years after the 10 years. That's very different because in the first case, the defendant knows he's facing a possible deprivation of all of his liberties for the rest of his life, and it turns out that even if the worst doesn't come to pass, he could still be deprived of some of his liberty for the rest of his life. In the second example, he's been told that he could have his liberty deprived for a set term but has not been told that he could have much of his liberty deprived after that set term. I can't tell from what you just told us whether you're asking us to decide that even in the second case he doesn't have to be told about supervised release. My position is simply that being advised that you have a potential exposure of life in prison is sufficient, and that's an admittedly unpublished decision but still relevant. Unpublished decision. I understand, but it's nevertheless relevant. That's exactly what this fellow said. Okay. I can see the logic of that. Was this fellow instructed by the judge that he was facing, when he waived his right to counsel, a possible deprivation of his freedom for the rest of his life? Yes. There are two points that I wanted to make before ending. I know I'm off. That was a question. I apologize. I'd really like an answer. I don't really care in my question about unpublished cases or whatever. I want a factual answer. Can you restate the question? I'm sorry, Your Honor. You didn't listen to the question? I did. The question is whether this defendant was told that he faced life imprisonment. Yes. He was explicitly told that at the December 2014 colloquy where he ratified his Feretta waiver and reintroduced it. Well, wait. That's a conclusory statement. I asked the question, when he waived his right to counsel, was he told, you could be sentenced to life in prison? Yes. If you look at the December 29, 2014 transcript, the second Feretta hearing, the defendant was explicitly told, you're looking 20 years to life. And the defendant responded, actually, I'm looking at 10 years to life because I'm going to challenge the 851 enhancement, showing even before that hearing he was well aware of sentencing. That's the second Feretta hearing, not the first one, right? That's correct. And there's nothing that indicates the court can't hold a second Feretta hearing to protect the record. I want to note two things before concluding. I have 30 seconds. First, the remedy is not vacature of the convictions. The remedy is to send it back for an evidentiary hearing on whether the defendant knowingly and voluntarily waived counsel at the time of his Feretta hearing. If you look at the December 14, 2014 transcript and December 29, 2014 transcript, they're both in December. The defendant was – there was a meeting in June. The court can hold a hearing to address what was addressed at that hearing and put that on the record. And there was also plea agreements that were offered, and that was put on the record. And those expressly addressed the nature of the offenses and the penalties. And you can look at Kimmel 622 F. 2nd. 720, which gave exactly that remedy. Second – Is that in your papers, that citation? Kimmel – it is in – I believe Kimmel – Would you please – would you please submit the citation to the deputy clerk after argument?  Yes, ma'am. And then give a copy to opposing counsel. The time for the government has expired. We understand that you're not waiving any of your arguments on the suppression issues. If my colleagues have any questions, yes. Let me apologize again for misunderstanding the questions. That's okay. It's NC right on behalf of the government. I guess at this point I'll just respond to those questions. Yes. Actually, here they are. Okay. Just simple. Is my timeline goofed up or did this individual raise a suppression and prevail in the suppression motion in the state action about the shaking of the toolbox? You're correct that he prevailed in the state court on that search and seizure. I don't think it's correct, though, that the basis on which he prevailed was because of the shaking of the toolboxes. Now, I should preface – So here's the deal, because you really don't have any time. But Judge Graber is being very kind to me. Did he argue in this case that shaking the toolbox was a search? No, he did not. Did the state court judge rule that shaking the toolbox was a search? I think he did. I don't know the answer to that. I think what the state court judge ruled was that the officer did not have facts to support believing those boxes contains items of value. Right. Right. Okay, so we've got that right. And now my next, just my last question, in terms of the sequence, had that already happened in the state court by the time we got to the FREDA waiver here? By the time we got to the FREDA waiver? The first February of 2014. It certainly happened by the time we were relitigating that search and seizure motion. I don't know the answer on the FREDA. Thank you. We'll figure it out. Thank you, counsel. Mr. Gunn, you have half a minute. Thank you, and I have a bunch of asterisk points in my notes here. Nothing was said about a life maximum sentence at the time of the initial waiver in February. It was not until December, 10 months later, after the waiver had already been entered and everything had already been lost, that that was brought up. As far as the nature of the charges, to be very clear here, the only thing Mr. Wakeel ever described in anything he wrote was the substantive conduct of possession with intent to distribute. There was no discussion of the key element of a conspiracy, that there be an agreement and what an agreement is. So there was no showing that that was something he understood. But that doesn't wind up being pivotal in this case. What winds up being pivotal is the search and seizure issue, it seems to me. Probably, though, Your Honor, I think you're right, and that's why having the waiver reaffirmed 10 months after he'd lost everything was not very meaningful. But I'm not so sure, Your Honor. You have this buyer-seller conspiracy issue. Then you may have venue issues if the Arizona drugs aren't tied into the conspiracy, because the conspiracy is bad. So I'm not sure it couldn't have been made into something a little more complicated by a trained attorney, something Mr. Wakeel had no idea about. As far as how sophisticated a litigant he was, if you think that matters, the government does place a lot of weight on it in its brief. I just refer you to my reply brief. But they don't need that for the verdict. I think that's right. I think the main argument here, Your Honor, is it is only in the rare case that you look at the record as a whole. You don't usually do that. You shouldn't do it here. Reaffirming a waiver 10 months later after you've lost everything that matters is meaningless unless the judge tells you you get a do-over and he didn't. But what's the strongest authority for your team on your argument that the information your client had about the penalties was insufficient? On the Feretta issue, right? We spent a lot of time with the opposing counsel talking about what he did have to be, what the government had to advise him of. So what's your strongest case? You mean that's expressly on the, well, my strongest case is Forrester that has to be on the record except in the rare case. And what is it that has to be on the record? What does he have to know? The potential penalties. And it includes supervised release. Arradondo says Rule 11 is an analogous context and Rule 11 requires that. There's no case on point in the Feretta context one way or the other. I don't have one, but neither do they. I think you agree on that then with opposing counsel. Okay. Counsel, I have just one more question. What many prosecutors do when a district judge is erring, for example, not going through the entire script on something where a script is required in Rule 11 or Feretta waiver or whatever, is the prosecutor brings to the attention of the judge an error that the judge risks making, and then the judge corrects himself. Did that happen here? I think there were two mistakes the district court here made, Your Honor. First of all. That wasn't the question. The question was whether the prosecutor pointed out to the court that the entire colloquy for Feretta had not occurred in February. The second mistake the district court made here was doing this in camera without the prosecutor present. Do you understand? The prosecutor wasn't there. Oh, is that right? I thought it was the prosecutor who asked the judge to inquire. No, that was the waiver, the trying to reaffirm and fix it 10 months later. Yes. But the initial waiver, which is what I'm saying. The initial waiver was in camera, no prosecutor present? Yeah. I think what the judge should have done is two things. He should have had his cheat sheet so he did it right, and the second thing he should have done was to call the prosecutor back in when he actually took the waiver. So I guess the first time it was with the defense lawyer who was still there and the defendant and the judge, and that's the only people that were present and the reporter. Thank you, counsel. The case just argued is submitted, and we'll take about a 10-minute break.
judges: Kleinfeld, Graber, Christen